IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JEROME GREENE,                          )
                                        )
            Petitioner,                 )
                                        )
      v.                                )          CV 117-124
                                        )          (Formerly CR 116-056)
UNITED STATES OF AMERICA,               )
                                        )
            Respondent.                 )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Jerome Greene filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

### A.      Information

On July 25, 2016, the government filed an information charging Petitioner with one count of conspiracy to distribute and possess with intent to distribute controlled substances in violation on 21 U.S.C. § 846. United States v. Greene, CR 116-056, doc. no. 1 (S.D. Ga. July 25, 2016) (hereinafter "CR 116-056"). The charge carried a maximum term of imprisonment of twenty years. CR 116-056, doc. no. 2. The Court appointed attorney Kenneth D. Crowder to represent Petitioner. See id., doc. no. 6.

**B.      Agreement to Plead Guilty**

On August 17, 2016, Petitioner waived his right to prosecution by indictment and consented to proceeding by information.  Id., doc. no. 6.  That day, Petitioner pleaded guilty to the sole count of the information.  Id., doc. nos. 7-9.  In exchange for the guilty plea, the government agreed to (1) not object to a recommendation for a two-point acceptance of responsibility reduction; (2) move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35.  Id., doc. no. 9, pp. 3-5.  The parties also stipulated the offense involved at least 500 grams but fewer than 1.5 kilograms of a mixture of methamphetamine for purposes of U.S.S.G. § 2D1.1 and other specific offense characteristics pursuant to U.S.S.G. § 2D1.1(b) do not apply in this case.  Id. at 4.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

[B]eginning on or before May 2014, the exact beginning date being unknown to the Grand Jury [sic], and continuing until the return of this indictment [sic], in Richmond, Columbia and McDuffie Counties in the Southern District of Georgia, the District of South Carolina, and elsewhere, the defendant herein: JEROME GREENE, did knowingly and intentionally combine, conspire, confederate, and agree with unindicted co-conspirators B.L., O.L.E., and "Chris" LNU and with other persons known and unknown, to commit certain offenses against the United States, that is, to distribute and to possess with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846.

Id. at 2.

By signing the Plea Agreement, Petitioner "entirely waive[d] his right to a direct

2

appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 5.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  Petitioner also "entirely waive[d] his right to collaterally attack his conviction and sentence on any ground and by any method," except based on a claim of ineffective assistance of counsel.  Id.  By signing the Plea Agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Mr. Crowder and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 7, 9.

During the change of plea hearing, Chief United States District Judge J. Randal Hall queried Petitioner as to his competence to proceed and found Petitioner was competent to enter a guilty plea if he so desired.  Id., doc. no. 20, p. 26.  Petitioner testified under oath he had enough time to discuss his case with Mr. Crowder and that he was entirely satisfied with counsel's preparation and handling of the case.  Id. at 5, 10-11.  Judge Hall reviewed the conspiracy charge to which Petitioner was pleading guilty and the potential prison term of not more than twenty years.  Id. at 15-16, 19.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id. at 11-13.  In addition, Judge Hall reviewed the appeal and collateral attack waivers and their limited exceptions, as well as

3

confirmed that, other than the promises the government made in the plea agreement, no one had made him any promises in order to get him to plead guilty. Id. at 15.

Next, Judge Hall heard a factual basis for the guilty plea from DEA Special Agent Jamie Lukich. Id. at 20-24. SA Lukich testified he received information on May 22, 2014, FedEx would deliver a package to Petitioner's residence and the package possibly contained methamphetamine. Id. at 20. Agents established surveillance at the residence, viewed the delivery, and saw a black female, later identified as Petitioner's daughter, arrive in a vehicle, obtain the package, and leave the residence. Id. at 20-21. Agents initiated a traffic stop, and a K-9 unit alerted to the package. Id. at 21. Petitioner was called to the scene. Id. He arrived and admitted receiving packages of methamphetamine at his residence. Id. Petitioner consented to a search of the package, which contained approximately three pounds of methamphetamine. Id. Petitioner was released because he agreed to cooperate with law enforcement. Id. at 22. However, Petitioner failed to abide by that agreement. Id. at 22-23.

On August 4, 2015, agents again established surveillance on Petitioner based on information he would be transporting methamphetamine to Kentucky. Id. Upon observing Petitioner leave his residence, agents initiated a traffic stop, and Petitioner consented to a search of the vehicle. Id. at 23. The agents uncovered 169 grams of methamphetamine hidden in the engine compartment. Id. at 23. Agents obtained and executed a search warrant for Petitioner's residence and seized more than $18,000 in cash in his bedroom, 201.5 grams of methamphetamine in the house, and 571.8 grams of methamphetamine in a vehicle parked outside. Id. During an interview conducted simultaneously with the search, Petitioner disclosed the location and quantity of the cash and the methamphetamine seized during the search. Id. at 24.

Petitioner stated to Judge Hall he had no disagreement with anything SA Lukich recounted.  Id. at 25.  Petitioner testified he was guilty of, and wanted to plead guilty to, Count One of the information.  Id.

### C.    Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at twenty-seven, Criminal History Category at III, and Guidelines imprisonment range at 87 to 108 months.  PSI ¶¶ 27, 45, 70, 82.   Neither Petitioner nor the government raised objections to the PSI.  PSI Addendum; CR 116-056, doc. no. 21, p. 3.

Petitioner, through counsel, filed a sentencing memorandum requesting a downward variance from the guideline range.  Id., doc. no. 11.  In support of the request, Petitioner argued he discovered a renewed dedication to the Bible and has "always been cooperative with law enforcement."  Id. at 1, 5.  Petitioner stated he accepted responsibility for his actions and chose not to file motions or objections "that would have wasted the resources of the government or Court."  Id. at 2.  Petitioner asked the Court to consider his past assistance to law enforcement and his nineteen months of state incarceration, for which he would not receive credit.  Id. at 3-4.  Petitioner said he wanted to rehabilitate himself for the good of his family.  Id. at 2.

At sentencing, Mr. Crowder reiterated all of these arguments in mitigation before the Court.  Id., doc. no. 21, pp. 4-6.  Additionally, Petitioner personally apologized to the Court for his mistakes, described his recent Bible studies, and expressed his desire for rehabilitation for his family's sake.  Id. at 4.  After discussing Petitioner's thirty-year criminal history, earlier drug-related convictions, and prior criminal incidents for which he was not charged,

Judge Hall imposed a sentence of 102 months imprisonment.  Id. at 8-9; id., doc. no. 13.  In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

**D.** **§ 2255 Proceedings**

Petitioner then timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims:

I.   Counsel provided ineffective assistance in the pretrial phase of the case when he failed to:

(a)   communicate with Petitioner and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial;

(b)   conduct an adequate and independent pretrial investigation; and

(c)   negotiate a more favorable plea deal.

II.   Counsel provided ineffective assistance in the sentencing phase of the case when he failed to:

(a)   review, discuss, and explain the PSI to Petitioner prior to sentencing;

(b)   file substantive objections to the PSI; and

(c)   file a notice of appeal as requested.

(See generally doc. nos. 1, 2, 5.)

## II.   DISCUSSION

### A.   No Evidentiary Hearing Required

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where

the petitioner's allegations are affirmatively contradicted in the record." <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>Lynn v. United States</u>, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  <u>Rosin v. United States</u>, 786 F.3d 873, 878-79 (11th Cir. 2015); <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984).  For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required.  <u>Thomas v. United States</u>, 596 F. App'x 808, 810 (11th Cir. 2015).  When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." <u>Gordon v. United States</u>, 518 F.3d 1291, 1302 (11th Cir. 2008).  Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### B.   Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003); <u>United States v. Armstrong</u>, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the

first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).  Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea."  Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), cert. denied, 568 U.S. 966 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (en banc) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

## C.    Petitioner Is Not Entitled to Relief on Any of the Pretrial Ineffective Assistance Claims in Ground I

Petitioner asserts Mr. Greene provided ineffective assistance in the pretrial phase of the case when he failed to:  (a) communicate with Petitioner and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding with trial; (b) conduct an adequate and independent pretrial investigation; and (c) negotiate a more favorable plea deal.  These claims are barred by the entry of a valid guilty plea, and in any event are devoid of merit.

### 1.    Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Ground I

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563,

569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified he understood the charge.  CR 116-056, doc. no. 20, pp. 4-5, 19.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 11-13.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 15, 18-19.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction.  In particular, Judge Hall explained the maximum twenty-year prison term for being convicted of the drug conspiracy charge.  Id. at 15-16.  Finally, Petitioner also testified he had enough time to discuss the case with Mr. Crowder and was satisfied with the help he had received from him.  Id. at 10-11, 13; see also id., doc. no. 9, p. 9.  ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let alone shown a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.

Accordingly, Petitioner cannot validly claim that his guilty plea was unknowingly or involuntarily entered or that there was no factual basis established for the guilty plea.  Such assertions are contradicted by the record of the Rule 11 hearing and Petitioner's sworn

testimony at that proceeding, as well as at the subsequent sentencing.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  As Petitioner's plea was knowing and voluntary, his claims in Ground I are barred.

> ### 2.    Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit

> #### a.    Petitioner's Ground I(a) and (b) Claims Are Without Merit

In Ground I(a) and (b), Petitioner argues Mr. Crowder failed to:  (1) perform any investigation or ask Petitioner about the case; (2) consult Petitioner about proceeding to trial or discuss trial strategy; and (3) advise Petitioner about the possibility of pleading guilty without a plea offer so he could retain his appellate rights.  (Doc. no. 2, pp. 17-19, 21-22.) Petitioner's own factual allegations contradict these very claims.

Petitioner states Mr. Crowder visited him three times prior to the change of plea hearing.  (Id. at 17-18.)  During those meetings, Mr. Crowder advised Petitioner to accept a plea offer because he "ascertained . . . there was no chance they [would] win at trial" and if convicted at trial, Petitioner could face a twenty-year sentence.  (Id. at 18-19.)  Mr. Crowder advised Petitioner to plead guilty to the information so the government did not send the methamphetamine for purity and weight testing, which could increase Petitioner's exposure.

(Id. at 18.)   Furthermore, Mr. Crowder indicated the government agreed not to charge Petitioner's wife and daughter if he pleaded guilty to the information.  (Id. at 19.)

Most difficult for Petitioner to overcome is his prior sworn assertions to Judge Hall that he had enough time to discuss the case with Mr. Crowder and was entirely satisfied with his preparation and handling of the case.  CR 116-056, doc. no. 20, pp. 10-11.  These same sworn assertions to Judge Hall belie Petitioner's contention Mr. Crowder did not discuss the merits of pleading guilty versus going to trial or adequately review the Plea Agreement.  As described in detail above, Judge Hall thoroughly reviewed the Plea Agreement at the Rule 11 proceedings, and Petitioner's signature on the Plea Agreement attests Petitioner "read and carefully reviewed this agreement with my attorney."  CR 116-056, doc. no. 9, p. 9.  Even now, Petitioner does not provide any specific factual information Mr. Crowder allegedly did not adequately review or pursue that would have changed the outcome of the case or caused him to go to trial rather than plead guilty, particularly in light of the fact Petitioner attested to his guilt at the Rule 11 proceedings.  Accordingly, Petitioner has shown neither deficient performance nor prejudice regarding Mr. Crowder's pretrial representation.

Finally, despite his argument to the contrary, there is not a reasonable probability Petitioner would have been able to plead guilty without a plea agreement and still receive the same sentence.  As stated above, the government stipulated to a drug quantity between 500 grams and 1.5 kilograms, even though Petitioner could have been charged for at least 2.3 kilograms of methamphetamine.  (Doc. no. 2, p. 8.)  Furthermore, had Petitioner not pled guilty in such an expedient manner, the government would have tested the methamphetamine for weight and purity, which likely would have further increased the chargeable quantity.  (Id. at 18.)  Thus, even assuming Mr. Crowder was deficient in failing to inform Petitioner of

14

this possibility of pleading without the benefit of a plea agreement, Petitioner cannot show the requisite prejudice.  Accordingly, Petitioner is not entitled to relief as to his Ground I(a) and (b) claims.

### b.    Petitioner is Not Entitled to Relief as to His Ground I(c) Claims

Finally, in Ground I(c), Petitioner claims Mr. Crowder was ineffective for failing to negotiate a more favorable plea agreement.  (Doc. no. 1, p. 4; doc. no. 2, pp. 25-30.) Petitioner argues the plea agreement "was screwed in favor of the government and did not have any benefit" for him.  (Doc. no. 2.)  Petitioner is incorrect.  In exchange for his guilty plea and the limited waiver of his direct appeal and collateral review rights, Petitioner gained an acceptance of responsibility reduction and an opportunity to cooperate and earn a § 5K1.1 reduction. CR 116-056, doc. no. 9, pp. 3-5 PSI ¶¶ 25-26.  Additionally, Petitioner benefitted from a stipulation to the quantity of drugs, which would have likely been a greater amount if the case has proceeded further.  CR 116-056, doc. no. 9, p. 4.  In fact, in his memorandum, Petitioner stated he could "reasonably be attributed with at least 2.3 kilograms of methamphetamine," which is almost one kilogram more than the stipulated amount accounted for.  (Doc. no. 2, pp. 8-9.)  Furthermore, Petitioner admits Mr. Crowder did in fact negotiate a second, better deal with the government after Petitioner turned down the first deal.  (Id. at 19.)

Additionally, as detailed in the testimony of Agent Lukich, the evidence against Petitioner was strong, and Petitioner offers no basis upon which Mr. Crowder could have bargained for a better deal.  A bald assertion that some sort of other, more favorable plea deal might have been possible fails to establish the requisite prejudice.  Cummings v. United States, No. CV 112-224, 2013 WL 2422889, at *8 (S.D. Ga. June 3, 2013) (collecting cases

for proposition that conclusory, after-the-fact assertion concerning possibility of more favorable plea deal insufficient to show prejudice).   Thus, as Petitioner cannot show prejudice, his claim fails.

### D.   Petitioner Is Not Entitled to Relief on Any of the Sentencing Ineffective Assistance Claims in Ground II

Petitioner also asserts Mr. Crowder provided ineffective assistance in the sentencing phase of the case when he failed to: (a) review, discuss, and explain the PSI to Petitioner prior to sentencing; (b) file substantive objections to the PSI, and (c) file a notice of appeal as requested.  Petitioner is not entitled to relief on these grounds.

### 1.   Petitioner's Ground II(a) Claims are Rebutted by The Record

As to Petitioner's Ground II(a) claim, the record indicates Mr. Crowder reviewed and explained the PSI to Petitioner prior to sentencing. Petitioner argues the PSI was "not reviewed [or] explained accordingly," and, in particular, he was "confused by the way the Guidelines worked in his case."  (Id.) However, Mr. Crowder told Judge Hall at sentencing he reviewed the PSI with Petitioner "on multiple occasions."  CR 116-056, doc. no. 21, p. 3. Petitioner addressed the Court directly and did not voice any concern regarding Mr. Crowder's representation or make an attempt to independently object to the PSI.  Id. at 4. Additionally, Petitioner acknowledges Mr. Crowder read the PSI to Petitioner.  (Doc. no. 2, p. 30.)  Furthermore, Petitioner states Mr. Crowder explained Petitioner could receive a sentence below the guideline range due to assistance to the government.  (Id. at 31.) .  Thus, according to Petitioner's own statements, Mr. Crowder reviewed the PSI to him and explained, at a minimum, how his sentence could set vary from the Guideline range set forth in the PSI.  (Doc. no. 2, pp. 30-31.)

16

Petitioner's contention he did not understand how the Guidelines would apply to his case is also rebutted by the record. Petitioner's plea agreement explained how the guidelines would be applied in his case. CR 116-056, doc. no. 9, pp. 2-3. The agreement also indicated the government would not be limited in what information it could give the Probation Office for purposes of the PSI and reiterated Petitioner had not been promised any particular sentence or range. Id. Petitioner signed the agreement, acknowledging he "read and carefully reviewed" it with Mr. Crowder. Id at 9. Furthermore, Judge Hall explained the sentencing process to Petitioner, including how the Guidelines would apply, and Petitioner testified he had no questions about the process. Id. at 17-18.

Accordingly, the record shows both Mr. Crowder and the Court explained how the sentencing process, including application of a Guideline range, would work; Petitioner acknowledged he understood the process on at least two occasions; and Mr. Crowder reviewed the PSI with Petitioner prior to sentencing. Accordingly, Petitioner's Ground II(a) claim is without merit.

## 2.      Mr. Crowder Was Not Ineffective by Not Filing Objections to The PSI

Petitioner is also not entitled to relief on his Ground II(b) claims. Petitioner argues Mr. Crowder was ineffective for "fail[ing]to present any evidence for mitigation of [Petitioner's] sentence," resulting in a sentence of 102 months of imprisonment. (Doc. no. 2, p. 31.) Petitioner also argues Mr. Crowder "stood mute like a potted plant" at sentencing and did not object to Petitioner's "substantively unreasonable" sentence. (Id.)

First, Mr. Crowder was not ineffective for not filing objections to the PSI. As explained in Petitioner's sentencing memorandum and by Mr. Crowder at sentencing, the decision not to file objections was part of an overall strategy to obtain a shorter period of

incarceration at sentencing by showing Petitioner accepted responsibility of guilt and was as cooperative as possible with the government.  CR 116-056, doc. no. 11, pp. 2-3; doc. no. 21, pp. 5-6.  Because Mr. Crowder's decision was supported by a reasonable strategic purpose, he was not deficient.  Strickland, 466 U.S. at 688.  Furthermore, Petitioner cannot show prejudice for Mr. Crowder's decision not to file objections.  Petitioner has not pointed to anything in the PSI he finds objectionable and, in fact, incorporates almost all of the PSI in his memorandum of support.  Without more, Petitioner cannot carry his burden of showing he was prejudiced by Mr. Crowder's decision.  Butcher, 368 F.3d at 1293.

Second, Petitioner's "potted plant" characterization of Mr. Crowder's presentation at sentencing is simply incorrect.  In addition to filing a sentencing memorandum, Mr. Crowder spoke at length during the sentencing hearing concerning Petitioner's:  (1) acceptance of responsibility; (2) desire to be rehabilitated; (3) newfound religious commitment; (4) devotion to his family; and (5) history of cooperation with law enforcement.  CR 116-056, doc. no. 21, pp. 4-6.

Finally, Petitioner's sentence was not "substantively unreasonable."  It was within the Guideline range established by the PSI, and, although it was at the higher end of the range, Judge Hall justified the term of incarceration based on Petitioner's thirty-year criminal history, earlier drug-related convictions, and past uncharged criminal incidents.  Id. a 8-9.  Thus, Petitioner could not have been prejudiced by Mr. Crowder deciding not to make a meritless objection.  United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

Mr. Crowder did not render ineffective assistance of counsel by deciding not to object to Petitioner's PSI or sentence.  Accordingly, Petitioner's Ground II(b) claims fail.

### 3.   Petitioner is Not Entitled to Relief on His Lost Appeal Claim

Petitioner is also not entitled to relief based on his Ground II(c) claim Mr. Crowder failed to file a notice of appeal after Petitioner instructed him to do so.  Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule.  "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions).  Thus, if the Court determines Mr. Crowder failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.  Furthermore, even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so. Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 478, 480).

On December 21, 2016, following sentencing, Petitioner signed a post-conviction consultation certification, indicating Mr. Crowder explained the appellate process, advised him about the advantages and disadvantages of pursuing an appeal, and thoroughly inquired into his interest in appealing his conviction.  CR 116-056, doc. no. 14, p. 3.  Petitioner

indicated he decided not to file an appeal after Mr. Crowder explained the consequences of not doing so.  Id.

In light of Petitioner's signed post-conviction consultation certification form, the Court finds wholly incredible Petitioner's allegations he instructed Mr. Crowder to file an appeal and Mr. Crowder failed to do so.  Accordingly, the Court finds Petitioner did not ask Petitioner to file an appeal, Mr. Crowder fulfilled any duty he had to consult with Petitioner about filing an appeal, and Petitioner is not entitled to relief on Ground II(c).

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 6th day of July, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA